# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WALTER RICHARDSON; MICHAEL REMERAZ; SAM BLOOM; CHRISS BLOOM; and STEPHANIE LEEWRIGHT,<br><br>                    Plaintiffs,<br><br>     v.<br><br>MYLAN INC.; MYLAN PHARMACEUTICALS INC.; MYLAN TECHNOLOGIES INC.; and DOES 1 through 100, inclusive,<br><br>                    Defendants. | CASE NO. 09-CV-1041-JM (WVG)<br><br>**ORDER SEALING SELECT PAGES OF TRIAL TRANSCRIPT**<br><br>Doc. No. 235 |

The above-entitled case is a wrongful death action brought against the pharmaceutical companies that designed, manufactured, marketed, and distributed a certain pain-relief patch used by Decedent Sandra Richardson ("Decedent") and alleged to have caused her death. At trial, Defendants called a number of their own employees to testify as to the patch's development and design, as well as to the manufacturing, quality assurance, and quality control processes implemented with respect to that product. Defendants now bring the instant motion requesting that the court redact certain portions of those witnesses' testimony. (Doc. No. 235.) For the following reasons, the court GRANTS Defendants' motion as amended.

**I.    BACKGROUND**

This action arises out of the death of Sandra Richardson, whose death Plaintiffs alleged

was caused, *inter alia*, by the improper design and/or manufacture of the fentanyl pain-relief patch produced by Defendants Mylan Technologies, Inc. and Mylan Pharmaceuticals, Inc. (collectively "Mylan") and worn by Decedent at the time of her death. Between November 8, 2010 and November 23, 2010, Plaintiffs' case was tried before a jury. On November 18, 2010, Defendants called as witnesses two Mylan employees, Kenneth Miller ("Dr. Miller") and Michael Houghton ("Mr. Houghton), who each provided testimony about the details behind the Mylan patch's design and production. Specifically, Dr. Miller, the Senior Director for Transdermal Product Development for Mylan Technologies, Inc. ("MTI"), discussed the rationale behind and the advantages of the patch's design, while Mr. Houghton, Vice President of Research and Development for MTI, gave a step-by-step account of the process by which the Mylan patch was manufactured in Mylan's facilities, including steps taken by Defendants to ensure the quality of their product. (See Doc. No. 235 Exh. D [filed under seal].) Mr. Houghton also made reference to certain of Defendant's exhibits during his testimony that were sealed pursuant to the court's order. (See id.; Doc. Nos.190 & 191.)

Following a jury verdict in their favor, Defendants now seek a court order redacting certain portions of the November 18 trial transcript containing Dr. Miller's and Mr. Houghton's testimonies. (Doc. No. 235.) No opposition to this motion has been filed.

## II.   LEGAL STANDARD

"It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597 (1978). However, it is equally clear that this right "is not absolute. Every court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes." Id. Nevertheless, "[u]nless a particular court record is one 'traditionally kept secret,' a 'strong presumption in favor of access' is the starting point" for the court's analysis. Kamakana v. City and County of Honolulu, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting Foltz v. State Farm Mut. Auto. Ins. Co., 331 F.3d 1122, 1135 (9th Cir. 2003).

In general, a party who seeks to seal a judicial record bears the burden of overcoming

this presumption, and can only do so by

> "articulat[ing] compelling reasons supported by specific factual findings" that outweigh the general history of access and the public policies favoring disclosure, such as the "public interest in understanding the judicial process." In turn, the court must "conscientiously balance[] the competing interests" of the public and the party who seeks to keep certain judicial records secret. After considering these interests, if the court decides to seal certain judicial records, it must "base its decision on a compelling reason and articulate the factual basis for its ruling, without relying on hypothesis or conjecture."

Kamekana, 447 F.3d at 1178-79 (quoting Foltz, 331 F.3d at 1135 and Hagestad v. Tragesser, 49 F.3d 1430, 1434 (9th Cir. 1995)) (internal citations omitted).

### III. DISCUSSION

At the outset, the court notes that the more appropriate form of relief sought by Defendants should be an order sealing the transcripts in question, as opposed to redacting them. Generally, redactions from the court's record are reserved for information such as individuals' home addresses, telephone numbers, and Social Security numbers. See, e.g., Kamakana, 447 F.3d at 1178-79; Phoenix Newspapers, Inc. v. U.S. Dist. Court for the Dist. of Ariz., 156 F.3d 940, 945 (9th Cir. 1998); cf. FED. R. CIV. P. 5.2(a) (requiring parties to redact certain information in court filings including social-security and taxpayer-identification numbers and names of minors). By contrast, parties who wish to foreclose public access to court documents for other reasons should generally request that those records be sealed. See, e.g., Kamakana, 447 F.3d at 1178-79; Hagestad, 49 F.3d at 1432.

In order to prevail on a motion to seal portions of the trial transcripts, Defendants must demonstrate that their interests in concealing the information therein outweigh the public's interest in accessing it. Here, Defendants have argued that the testimony of Dr. Miller and Mr. Houghton contains "commercially sensitive information" about "[t]he method and manner by which the [Mylan patch] was invented, is manufactured, and is maintained." (Doc. No. 235 pp. 4, 9.) According to Defendants, the Mylan patch "is manufactured in a way that other manufacturers cannot duplicate or legally copy"; as a result, the types of information contained in the testimony at issue "is the most secret proprietary confidential information Mylan possesses." (Id. at p.4.) Particularly, in light of "the highly competitive environment in which

1  drug manufacturers operate," Defendants urge that protection of this information from public
2  scrutiny is vital. (Id. at p.5.)

3  Defendants' assertions are borne out by a review of the portions of the transcript
4  identified as containing sensitive information. (See id. Exh. D.) The testimony in question does
5  appear to contain certain proprietary information that, if revealed to Defendants' competitors,
6  could have serious consequences for Defendants' business.[1] Moreover, as Defendants have
7  convincingly argued, the information at issue is of comparatively little value to the general
8  public in terms of enhancing its "understanding [of] the judicial process"; because Defendants
9  seek to seal relatively small portions of the overall trial transcript, and because those portions
10 do not include any information vital to understanding the nature of the underlying proceedings,
11 Defendants' private interests clearly outweigh the public's interest in disclosure. Indeed, courts
12 have repeatedly mentioned trade secrets as an archetypal category of information for which
13 sealing of a court's records is justified. See Kamakana, 447 F.3d at 1179 (finding "compelling
14 reasons" to seal court records where those records would be used "to gratify private spite,
15 promote public scandal, circulate libelous statements, or release trade secrets"); see also Nixon,
16 435 U.S. at 598 (citing to cases where court files have been properly sealed to protect "sources
17 of business information that might harm a litigant's competitive standing"). Therefore,
18 Defendants have met their burden and proven that a court order sealing the transcripts in
19 question is appropriate.
20 //
21 //
22 //
23 //
24 //
25 //

---

[1] This conclusion is based on the nature of the testimony itself. Defendants' reliance on references in Mr. Houghton's testimony to trial exhibits that were themselves sealed is misplaced. (Doc. No. 235 p.2.) Because these exhibits were sealed pursuant to the stipulation of the parties, the court's decision to admit the exhibits under seal implies no actual findings by the court. See Kamakana, 447 F.3d at 1176.

## IV. CONCLUSION

For the foregoing reasons, the court hereby orders the following pages of trial transcript in the above-entitled case dated November 18, 2010 to be SEALED:

1) Testimony of Kenneth Miller:

- Doc. No. 226, p.1217 l.16 ("The drug . . . .") to p.1220 l.14 (". . . our advantage.")

2) Testimony of Michael Houghton:

- Doc. No. 227, p.1258 l.3 ("The process . . . .") to p.1259 l.18 (". . . we are manufacturing.")

- Doc. No. 227, p.1260 l.19 ("You mentioned . . . .") to p.1276 l.23 (". . . that appear.")

- Doc. No. 227, p.1282 l.7 ("And you have talked about. . . .") to p.1285 l.22 ("Yes, it is.")

**IT IS SO ORDERED.**

DATED: March 9, 2011

Hon. Jeffrey T. Miller
United States District Judge